# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BIG O RELIEF, et al., | 1:17-cv-01566-LJO-BAM |
| Plaintiffs, | MEMORANDUM DECISION AND ORDER RE DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND SPECIAL MOTION TO STRIKE |
| v. | |
| COUNTY OF KERN, et al., | |
| Defendants. | (ECF No. 3) |

## I. PRELIMINARY STATEMENT TO PARTIES AND COUNSEL

Judges in the Eastern District of California carry the heaviest caseloads in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. Given the shortage of district judges and staff, this Court addresses only the arguments, evidence, and matters necessary to reach the decision in this order. The parties and counsel are encouraged to contact the offices of United States Senators Feinstein and Harris to address this Court's inability to accommodate the parties and this action. The parties are required to reconsider consent to conduct all further proceedings before a Magistrate Judge, whose schedules are far more realistic and accommodating to parties than that of U.S. Chief District Judge Lawrence J. O'Neill, who must prioritize criminal and older civil cases.

Civil trials set before Chief Judge O'Neill trail until he becomes available and are subject to suspension mid-trial to accommodate criminal matters. Civil trials are no longer reset to a later date if Chief Judge O'Neill is unavailable on the original date set for trial. Moreover, this Court's Fresno

1

Division randomly and without advance notice reassigns civil actions to U.S. District Judges throughout the Nation to serve as visiting judges. In the absence of Magistrate Judge consent, this action is subject to reassignment to a U.S. District Judge from inside or outside the Eastern District of California.

## II. INTRODUCTION

Plaintiffs Big O Relief, Don H. Yoon, Eunice S. Yoon, and Alvaro Ordaz (collectively, "Plaintiffs") bring this suit against County of Kern, Kern County Board of Supervisors, Kern County Public Works - Code Compliance Division, Kern County Sheriff's Department, District Attorney's Office, County Counsel's Office, Kern County Fire Department, Kern County Planning and Natural Resources Department, Kern County Department of Agriculture and Measurement Standards, Kern County Public Health Department, Greg Fenton, Mick Gleason, David Couch, Mike Maggard, Zack Scrivner, Donny Youngblood, Lisa Green, Mark L. Nations, James L. Brannen (erroneously sued as James L. Brennan), Gurujodha S. Khalsa, Lorelei Oviatt, Glenn Fankhauser, and Al Rojas (collectively, "Defendants"). Defendants moved to dismiss. ECF No. 3 ("Mot."). Plaintiffs opposed, ECF No. 6 ("Opp."), and Defendants filed a reply, ECF No. 9 ("Reply"). This matter is suitable for disposition without oral argument. *See* Local Rule 230(g). For the reasons set forth below, Defendants' motion to dismiss is **GRANTED IN PART**.

## III. FACTUAL BACKGROUND

Plaintiffs filed their Complaint on October 12, 2017, in Kern County Superior Court. ECF No. 1-1, Ex. A ("Complaint"). The Plaintiffs are Big O Relief, which Plaintiffs describe as a "California Nonprofit Mutual Benefit Corporation," Complaint ¶ 3, and "legal medical marijuana dispensary," *id.* ¶ 37(1)(a); Doo H. and Eunice S. Yoon, owners of the real property where Big O Relief is located, *id.* ¶¶ 4-5; and Alvaro Ordaz, proprietor of Big O Relief, *id.* ¶ 5.

According to the Complaint, on July 28, 2016, Kern County filed a complaint in Kern County Superior Court for preliminary and permanent injunction for violation of Kern County Ordinance Code Section 5.86 against Big O Relief, Doo Yoon, and Eunice Yoon. Complaint ¶ 52; Complaint Ex. H. On

January 13, 2017, the court entered default judgment against the defendants in that suit. *Id*. ¶ 52.

On August 10, 2017, Zack Scrivner, Supervisor of the Second District for the Kern County Board of Supervisors, issued a press release stating that Kern County was instituting a "crackdown on illegal medical marijuana dispensaries" and announcing the formation of an Enforcement Task Force as part of "an initiative to close all illegal medical marijuana dispensaries that began operation after the May 10, 2016 Moratorium enacted by the Board of Supervisors." *Id*. ¶ 54; *id*, Ex. A. The press release specifically named three dispensaries in Rosamond, California, where the Enforcement Task Force had "seized several thousand dollars in unsafe edible product of unknown origin, as well as illegal bath salts" and issued "several notice of violation. *Id*., Ex. A. The press release did not mention Big O Relief or the other Plaintiffs. *Id*. The Complaint alleges that this press release, and another that did specifically mention Big O Relief, were "re-published in a local newspaper to citizens of Kern County." *Id*. ¶ 112; *id*., Ex. I (article titled "Kern County serves warrants on three more pot shops in Eastern Kern," listing Big O Relief as one of "three illegal medical marijuana dispensaries in the communities of Mojave and Rosamond" that the Task Force was acting to close).

Plaintiffs contend that the statement in Scrivner's press release that all medical marijuana dispensaries to be closed were "illegal" was "false and extremely defamatory." *Id*. ¶ 37. The Complaint alleges that "[a]s a direct result of Supervisory Scrivner's press release," on or around August 22 or 24, 2017, Kern County Enforcement Task Force agents conducted a "raid" at Big O Relief, located at 16940 State Highway 14, Mojave, California 93501, with guns drawn in order to "effectuate the unlawful seizure of medicinal products and materials belonging to Plaintiffs." *Id*. ¶¶ 37(1)(c), 55. Defendant Al Rojas, Kern County Code Compliance Division Supervisor, issued a notice of violated dated August 30, 2017, which stated that following an inspection on August 24, 2017, the County determined that the property was "in violation of Kern County Ordinances Code section 5.85" for cultivation of more than twelve marijuana plants on the property. *Id*. ¶ 37(1)(d), *id*., Ex. B.

At an unspecified date in August of 2017, the Complaint alleges that Defendant Kern County

Planning Director Lorelei Oviatt stated at a Board of Supervisors meeting that Kern County wanted to "rid Kern County of the existing medical marijuana dispensaries so that businesses from Los Angeles could establish their business in Kern County." *Id*. ¶ 41. The reason that the County so desired, the Complaint alleges, is that "allowing such Los Angeles-based business to enter Kern County would save Kern County money because the specified business has a history of filing nuisance lawsuits against their competitors and paying for the removal of existing dispensaries." *Id*; *id*. ¶ 116. The Complaint additionally alleges that Oviatt stated, in "another instance of defamatory action" against Plaintiffs, that "there are no legal dispensaries in Kern County because we [Kern County] have never permitted any medical marijuana dispensary to operate in Kern County." *Id*. ¶ 114.

Finally, Plaintiffs allege that during a Kern County Board of Supervisors meeting on September 26, 2017, Kern County Counsel Mark L. Nations "argued that the ruling of the Fifth District Court of Appeals [*sic*] in County of Kern v. T.C.E.F., Inc., was inapplicable to the present matters affecting medical marijuana dispensaries in Kern County," stating that the "case had nothing to do with medical marijuana issues, but was only an elections matter." *Id*. ¶ 31(1)(i). Plaintiffs allege that because the outcome of that case had the "effect of reinstating Ordinance G-7849, a medical marijuana ordinance," Mr. Nations's interpretation "reveals his desire to fraudulently induce the public and those he reports to of his interpretation of the law as he sees appropriate, without any regard for the truth and/or actual law in the matter." *Id*.; *see also* ¶ 47 ("Mr. Nations' flimsy interpretation of relevant case 1aw reveals his and his department's lack of understanding of the issues; or, alternatively, Mr Nations' interpretation demonstrates his and his department's desire to fraudulently induce the public and those he reports to his interpretation of the law as he sees appropriate, without any regard for the truth and/or actual law in the matter or how those interpretations negatively impact citizens and business of Kern County.").

Plaintiffs allege that all Defendants participated in a racketeering enterprise, the primary objective of which "has been to gain political favor, enhance individual Defendants' reputations in the community for political and personal gain by inflicting severe and sustained economic and personal

(physical and reputational) hardship upon Plaintiffs, with the intent of impairing, obstructing, preventing and discouraging Plaintiffs from operating a medical marijuana dispensary - a topic of great debate among law-abiding citizens of the State of California." *Id.* ¶ 40.

Plaintiffs' Complaint brings fourteen causes of action. The first three are federal causes of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), for acquisition and maintenance of an interest and control of an enterprise engaged in a pattern of racketeering activity, conduct and participation in a RICO enterprise, and conspiracy to engage in a pattern of racketeering activity. The other causes of action are assault, battery, negligence, defamation: libel per se and slander, fraud/intentional misrepresentation, negligent misrepresentation, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, conversion, declaratory relief, and preliminary injunction. Plaintiffs filed suit in Kern County Superior Court, and Defendants removed to this Court on November 22, 2017. ECF No. 1. Defendants moved to dismiss based on Federal Rule of Civil Procedure 12(b)(6) and made an anti-SLAPP motion[1] pursuant to California Code of Civil Procedure § 425.16.

## IV. **STANDARD OF DECISION**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim upon which relief may be granted, the Court accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

---

[1] "SLAPP" stands for "strategic lawsuits against public participation." *Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 764 (9th Cir. 2017).

Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim. "Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008). To the extent that the pleadings can be cured by the allegation of additional facts, the Court will afford the plaintiff leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## V. <u>ANALYSIS</u>

**A.    Motion To Dismiss**

    **1.    RICO Claim In First, Second, And Third Causes Of Action**

RICO provides a private civil cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). Plaintiffs assert that Defendants have violated three RICO provisions. First, they allege violation of 18 U.S.C. § 1962(b), which provides:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(b).

Second, they allege violation of 18 U.S.C. § 1962(c), which provides:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

Finally, Plaintiffs allege violation of 18 U.S.C. § 1962(d), which provides:

> It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(d).

To state a claim for a RICO violation under § 1962(b), "a plaintiff must allege (1) the defendant's activity led to its control or acquisition over a RICO enterprise, and (2) an injury to plaintiff resulting from defendant's control or acquisition of an RICO enterprise." *Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 830 (9th Cir. 2003), *overruled on other grounds by Odom v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007) (en banc). *See also Nat'l Org. for Women, Inc. v. Scheidler,* 510 U.S. 249, 259 (1994) ("The 'enterprise' referred to in [Section 1962(b)] is thus something acquired through the use of illegal activities or by money obtained from illegal activities.").

Pleading a violation of § 1962(c) requires that a defendant "must participate in (1) the conduct of (2) an enterprise that affects interstate commerce (3) through a pattern (4) of racketeering activity or collection of unlawful debt." *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014). "In addition, the conduct must be (5) the proximate cause of harm to the victim." *Id.* (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496-97 (1985)). A "plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima*, 473 U.S. at 496; *see also Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 773 (9th Cir. 2002) ("A plaintiff must show that the defendant's RICO violation was not only a 'but for' cause of his injury, but that it was a proximate cause as well."). "Though sections 1962(b) and (c) have some distinct elements, the touchstone of both is that each individual defendant must be shown to have personally participated in a pattern of racketeering activity." *Zazzali v. Ellison*, 973 F. Supp. 2d 1187, 1200 (D. Idaho 2013).

Pleading a violation of § 1962(d) requires that a plaintiff allege "either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. America Online, Inc.*, 208 F.3d 741, 751 (9th Cir. 2000). The acts that can serve as predicate offenses are limited to those enumerated in the statute and include, among others, mail and wire fraud. 18 U.S.C. § 1961(1). "It is the mere agreement to violate RICO that § 1962(d) forbids; it is not necessary to prove any substantive RICO violations ever occurred as a result of the conspiracy." *Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n*, 298 F.3d 768, 774–75 (9th Cir. 2002). "Although a civil RICO conspiracy claim can survive even if the substantive RICO claim does not, where the plaintiff has failed to allege the requisite substantive elements of RICO, a RICO conspiracy claim cannot stand." *Ochoa v. Hous. Auth. of City Los Angeles*, 47 F. App'x 484, 487 (9th Cir. 2002).

Defendants argue that Plaintiffs' RICO claims should be dismissed because the Complaint fails to adequately allege the predicate acts, to plead or identify the alleged enterprise, and to plead that the

acts affected interstate commerce.

### a.     Pattern Of Racketeering Activity

RICO defines "racketeering activity" to include "any act which is indictable under" certain enumerated provisions of Title 18 of the United States Code, including predicate acts of mail fraud, 18 U.S.C. § 1341, and wire fraud, § 1343.  18 U.S.C. § 1961(1)(B).  "Racketeering activity" also includes "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year."  18 U.S.C. § 1961(1)(A).  In order to constitute a "pattern," there must be at least two acts of racketeering activity within 10 years of each other.  18 U.S.C. § 1961(5).  A pattern is not formed by "sporadic activity" but instead requires a showing "that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity."  *H.J., Inc. v. Northwestern Bell Tel. Co*., 492 U.S. 229, 239 (1989).  "Racketeering predicates are related if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events."  *United States v. Freeman*, 6 F.3d 586, 596 (9th Cir. 1993) (quoting *H.J., Inc.*, 492 U.S. at 240).

The Complaint asserts that the "three predicate acts which constitute this pattern of racketeering activity are" (1) fraud/intentional misrepresentation and negligent misrepresentation; (2) defamation; and (3) assault and battery.  Complaint ¶ 37; *see also id*. ¶ 65.  It further alleges that Defendants "conspired to deprive Plaintiffs' rights to operate a lawful business under California law" and actually did perform acts to do so.  *Id.* ¶ 37.  In addition, it alleges that "[o]ther RICO predicate acts, although appearing to be isolated events, were actually part of the overall conspiracy and pattern of racketeering activity alleged herein, *e.g.* providing misinformation to the public, via electronic and/or U.S. Post Office mail, for the personal gain of Defendants, and each of them . . . including, but not limited to the dissemination of false information regarding businesses operating as medical marijuana dispensaries."

*Id.* ¶ 38.

Claims that can serve as predicate acts under RICO are limited to those enumerated in Section 1961 of the statute. Plaintiffs' allegations concerning common-law fraud, intentional misrepresentation, negligent misrepresentation, conspiracy against rights pursuant to 18 U.S.C. § 241, deprivation of rights under color of law under 18 U.S.C. § 242, defamation, assault, and battery are not RICO predicates. *See* 18 U.S.C. § 1961(1) (setting forth the complete list of acts that can serve as a "racketeering activity"). Nor are Plaintiffs' causes of action for negligence, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, or conversion RICO predicate acts.[2]

In their opposition, Plaintiffs argue that they have adequately pleaded claims for wire fraud. To state a claim for mail or wire fraud, a plaintiff must plead "(1) a scheme or artifice devised with (2) the specific intent to defraud and (3) use of the United States mail or interstate telephone wires in furtherance thereof." *Orr v. Bank of Am.*, 285 F.3d 764, 782 (9th Cir. 2002); *see also* 18 U.S.C. 1343.[3] In addition, RICO claims relying on predicate offenses of mail or wire fraud are subject to Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004). Though the circumstances must be pleaded with particularity, a plaintiff may allege fraudulent intent generally. *Eclectic Properties E.*, 751 F.3d at 995 n.5 (noting that courts nevertheless must apply the "plausibility analysis of *Twombly* and *Iqbal*" to Rule 9, just as they do to Rule 8 claims). "In order to prove a violation of [the mail or wire fraud statutes],

---

[2] Though the Complaint does not list these explicitly as predicate acts, the Complaint does frame each cause of action as part of the RICO enterprise. *See, e.g.*, Complaint at 48-49 ¶ 1 ("That this Court liberally construe the RICO laws and thereby find that all Defendants, both jointly and severally, have acquired, maintained, and acted upon, both directly and indirectly, an interest in and/or control of a RICO enterprise of persons and of other individuals who were associated in fact, all of whom engaged in, and whose activities were in furtherance of Defendants' negligent actions.")

[3] "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 1343.

there must be a showing of a specific intent to defraud." *United States v. Peters*, 962 F.2d 1410, 1414 (9th Cir. 1992).[4] The term "defraud" refers "to wronging one in his property rights by dishonest methods or schemes,' and 'usually signif[ies] the deprivation of something of value by trick, deceit, chicane or overreaching.'" *McNally v. United States*, 483 U.S. 350, 358 (1987), *superseded in part by statute as stated in Skilling v. United States,* 561 U.S. 358 (2010). *See also United States v. Berghuis*, 709 F. App'x 435, 436 (9th Cir. 2017) (conviction under mail and wire fraud statutes requires proof that defendant "acted with the intent to defraud; that is, the intent to deceive or cheat"); *United States v. Treadwell*, 593 F.3d 990, 998 (9th Cir. 2010) (affirming conviction for wire fraud where jury instructions defined "intent to defraud" to mean "an intent to deceive or cheat"). "The intent to defraud may be inferred from a defendant's statements and conduct." *Peters*, 962 F.2d at 1414. In the absence of direct evidence of fraudulent intent, a plaintiff asserting fraud "must first prove the existence of a scheme which was reasonably calculated to deceive persons of ordinary prudence and comprehension, and then, by examining the scheme itself the court may infer a defendant's specific intent to defraud." *Eclectic Properties E.*, 751 F.3d at 997 (internal quotation marks omitted) (quoting *United States v. Green*, 745 F.2d 1205, 1207 (9th Cir. 1984)). Allegations of fraud brought in connection with a RICO claim "must identify the time, place, and manner of each fraud plus the role of each defendant in each scheme." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 541 (9th Cir. 1989) (internal citation and quotation marks omitted); *see also Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.") (internal alterations, quotation marks, and citation omitted). A claim for mail or wire fraud "can be premised on either a non-disclosure or an affirmative misrepresentation." *Eller v. EquiTrust Life Ins. Co.*, 778 F.3d 1089, 1092 (9th Cir.

---

[4] The Ninth Circuit looks to precedents involving the mail fraud statute "to inform [its] interpretation of the federal wire fraud statute." *United States v. Treadwell*, 593 F.3d 990, 999 n.6 (9th Cir. 2010).

2015).  A fraud claim based on non-disclosure can survive only "when there exists an independent duty that has been breached by the person so charged." *Id.* (citation and internal quotation marks omitted). "Absent an independent duty, such as a fiduciary duty or an explicit statutory duty, failure to disclose cannot be the basis of a [RICO] fraudulent scheme." *Id.* (citation omitted).

Plaintiffs in their Opposition identify three purported predicate acts of wire fraud that they rely on to support their racketeering claims.  First, they point to a press release that Supervisor Zack Scrivner released on August 10, 2017, stating in relevant part

> A Kern County Enforcement Task Force commenced action today to enforce the county's moratorium on three illegal medical marijuana dispensaries in the community of Rosamond.  The three dispensaries, Green Mile Collective . . . , Highway Relief Medical . . . , and 5 Gramz Stop . . . were operating illegally.

> This Enforcement Task Force action commences an initiative to close all illegal medical marijuana dispensaries that began operation after the Mary 10, 2016 Moratorium enacted by the Board of Supervisors.

ECF No. 1-1, Ex. A, at PDF p. 67.  Plaintiffs claim that because this was placed on the internet, it qualifies as a wire communication under 18 U.S.C. § 1343.  Opp. at 21.  The statement announces enforcement of a policy Kern County adopted and does not even include on the list of "illegal medical marijuana dispensaries" the one at issue in this case.  Assuming that Plaintiffs intended to refer to a separate press release that used similar language but did specifically mention Big O Relief, *see* ECF No. 1-1, Ex. I at PDF p. 106, the statements still do not plausibly allege wire fraud.  Plaintiffs argue that the press release amounts to wire fraud because Scrivner informed the public that the Enforcement Task Force would "eradicate all 'illegal' marijuana dispensaries, despite the fact that he had not researched whether the shops that were being raided were in fact illegal."  Opp. at 22.  This allegation boils down to a claim that a County official issued a press release about an enforcement action without knowing whether the action would succeed on the merits if litigated.  That is not fraud.  The Complaint does not allege facts sufficient to make a plausible inference that Scrivner made a material misrepresentation or that he acted with a specific intent to defraud.  *See Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998)

1  ("[C]onclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to

2  dismiss.").

3         Plaintiffs also rely on statements made at Kern County Board of Supervisors meetings, which

4  Plaintiffs contend are "preserved on video and digitally telecast" through Kern County's website and

5  therefore satisfy the wire fraud requirement of use of the wires. Opp. at 21. The second alleged

6  predicate acts of wire fraud are statements by Lorelei Oviatt "at a Kern County Board of Supervisors

7  meeting that was telecast over the Internet." *Id.* The Complaint alleges as follows:

> Defendant Kern County Planning Director Lorelei Oviatt disclosed at a public Board of
> Supervisors meeting in August 2017, [*sic*] that Kern County wanted to rid Kern County
> of the existing medical marijuana dispensaries so that businesses from Los Angeles could
> establish their business in Kern County. Director Oviatt further disclosed that allowing
> such Los Angeles-based business to enter Kern County would save Kern County money
> because the specified business has a history of filing nuisance lawsuits against their
> competitors and paying for the removal of existing dispensaries.

12  ECF No. 1-1, Complaint ¶ 41. *See also id.* ¶¶ 114 ("Defendant Kern County Planning Director Lorelei

13  Oviatt clearly stated 'there are no legal dispensaries in Kern County because we [Kern County] have

14  never permitted any medical marijuana dispensary to operate in Kern County.' Ms. Oviatt's statement

15  ignores the fact that the State of California permits medical marijuana dispensaries to operate in

16  California."), 116 (restating the allegation in ¶ 41 and alleging that "[g]iven the statements of Director

17  Oviatt, it is clear that Defendants are willing to intentionally injure lawful Kern County businesses in

18  order to gain political and personal favor from the citizens of Kern County by suggesting that they,

19  Defendants, saved the County of Kern some money."). These statements do not plausibly allege a

20  scheme to defraud. Accepting for purposes of this motion that this is an accurate recitation of Oviatt's

21  statements, the declaration that Kern County wished to shut down existing dispensaries and allow Los

22  Angeles-based dispensaries to take their place is not on its face evidence of a fraudulent scheme but

23  instead an accurate statement about the steps the County planned to take and why it planned to take

24  them. Rather than demonstrating a fraudulent scheme, it demonstrates the opposite – a forthright

25  explanation of a proposed policy and the motive behind the policy.

Finally, Plaintiffs argue that the Complaint made out a claim for wire fraud based on statements made by Kern County Counsel Mark L. Nations about the implications of a ruling by a California appellate court. They argue that Nations made comments "that were all put on tape and put on the Internet to defraud the public into believing that the Board of Supervisors and the County of Kern were upholding the laws of the State of California, when in fact they were not." Opp. at 22. The Complaint discusses an opinion from the Fifth District Court of Appeal in *County of Kern v. T.C.E.F., Inc.*, in which that court invalidated Kern County's repeal of a 2009 medical marijuana ordinance. Complaint ¶ 46. The Complaint specifically alleges as follows:

> On September 26, 2017, during a Kern County Board of Supervisors meeting, Mr. Nations argued that the ruling of the Fifth District Court of Appeals [*sic*] in County of Kern v. T.C.E.F., Inc., was inapplicable to the present matters affecting medical marijuana dispensaries in Kern County because T.C.E.F. was merely an "elections matter" case. Mr. Nations stated the T.C.E.F. case had nothing to do with medical marijuana issues. Again, however, according to Kern County Ordinance Code § 5.86.020(14) - Declaration of Urgency, the ruling in T.C.E.F. "has created uncertainty as to how and under what circumstances the county may regulate current dispensaries and any future dispensaries and how such local regulation will interact with the new state legislation and its implementing regulations." In fact, as stated above, the T.C.E.F. decision had the effect of reinstating Ordinance G-7849, a medical marijuana ordinance. If the T.C.E.F. case was merely an "elections case" as described by Mr. Nations, then why would the Kern County Ordinance Code treat the Fifth District's decision with such gravity and importance? As the lead legal counsel for the entire county, especially when providing legal counsel to the Board of Supervisors, Mr. Nations' flimsy interpretation of relevant case law reveals his and his department's lack of understanding of the issues; or, alternatively, Mr. Nations' interpretation demonstrates his and his department's desire to fraudulently induce the public and those he reports to his interpretation of the law as he sees appropriate, without any regard for the truth and/or actual law in the matter or how those interpretations negatively impact citizens and business of Kern County.

Complaint ¶ 47. This fails to state a claim for wire fraud. By its own terms, the Complaint is agnostic as to whether the asserted "flimsy interpretation of relevant case law" represents "lack of understanding of the issues" or, in the alternative, fraud. The Complaint thus fails to allege that the statement was part of a scheme to defraud and falls far short of alleging that the statement itself demonstrates a specific intent to defraud. This is insufficient to survive a motion to dismiss.

Defendants correctly point out that "wire fraud" is absent entirely from the Complaint and that

the paragraphs that Plaintiffs cite nowhere mention the use of the internet. Reply at 5. The Complaint consequently fails to make out a claim for wire fraud on this basis alone. Even if the Court construes the above allegations to have included the use of the wires to in furtherance of a course of action, they have not, as discussed above, plausibly alleged a fraudulent scheme or fraudulent intent. None of the alleged predicate acts of wire fraud amounts to a "scheme to deprive another of money or property by means of false or fraudulent pretenses, representations, or promises," *United States v. Brugnara*, 856 F.3d 1198, 1207 (9th Cir.) (quoting *Carpenter v. United States*, 484 U.S. 19, 27 (1987)), *cert. denied*, 138 S. Ct. 409 (2017), and the facts asserted in support of the Complaint's claims for wire fraud "do not support a plausible inference that Defendants had the required specific intent to defraud," *Eclectic Properties E., LLC*, 751 F.3d at 1000.

Plaintiffs have not alleged an adequate pattern of racketeering activity in violation of 18 U.S.C. §§ 1962(b) or (c).

### b.   **RICO Enterprise**

Defendants argue that Plaintiffs' RICO claims should be dismissed because the Complaint fails to allege or identify the existence of an enterprise, an element common to violations of §§ 1962(b), (c), and (d).

RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). This "straightforward" definition is "not very demanding." *Odom*, 486 F.3d at 548. At issue here is the final type of enterprise listed in RICO's definition, "a group of individuals associated in fact." *See, e.g.,* Complaint ¶¶ 59, 64.

An associated-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct." *Odom*, 486 F.3d at 552 (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). A plaintiff seeking to establish an enterprise "must provide both 'evidence of an ongoing organization, formal or informal,' and 'evidence that the various associates function as a

continuing unit.'" *Id.* (quoting *Turkette*, 452 U.S. at 583). The Supreme Court has described that under

RICO's definition, "the very concept of an association in fact is expansive." *Boyle v. United States*, 556

U.S. 938, 944 (2009) (holding that an associated-in-fact enterprise need not have a hierarchical structure,

a chain of command, fixed roles, or other formal characteristics). Nevertheless, it is not unlimited. The

Ninth Circuit has summarized the Supreme Court's jurisprudence that "[t]o show the existence of an

enterprise under the second element, plaintiffs must plead that the enterprise has (A) a common purpose,

(B) a structure or organization, and (C) longevity necessary to accomplish the purpose." *Eclectic*

*Properties E.,* 751 F.3d at 997 (citing *Boyle,* 556 U.S. at 946). In addition, a single entity cannot be both

the enterprise and an individual RICO defendant. *River City Markets, Inc. v. Fleming Foods W., Inc.*,

960 F.2d 1458, 1461 (9th Cir. 1992).

The Complaint describes a far-reaching enterprise and names as Defendants Kern County, a

number of its departments, including the Board of Supervisors and County Counsel's Office, and a

number of individual County employees. The Complaint describes the alleged enterprise as follows:

> All Defendants, named or DOE, that exist as political subdivisions of the County of Kern
> and State of California, and that at all relevant times hereto operated under authority of
> said political subdivision, are an enterprise engaged in and the activities of which affect
> or impact the state of California, to wit: Defendants, and each of them, are required to
> execute the laws of the State of California and the County of Kern by way of their
> individual positions as representatives of the public in their respective roles.

Complaint ¶ 35. The Complaint alleges that the common purpose of the racketeering enterprise

> has been to gain political favor, enhance individual Defendants' reputations in the
> community for political and personal gain by inflicting severe and sustained economic
> and personal (physical and reputational) hardship upon Plaintiffs, with the intent of
> impairing, obstructing, preventing and discouraging Plaintiffs from operating a medical
> marijuana dispensary – a topic of great debate among law-abiding citizens of the State of
> California. Defendants', and each of their, actions were done despite Big O Relief
> operating as a legal business within Kern County, California.

Complaint ¶ 40. The Complaint does not, however, allege with particularity who exactly committed

RICO violations as part of the enterprise. As an initial matter, government entities and government

employees acting in their official capacities are not subject to RICO liability. *See Pedrina v. Chun*, 97

F.3d 1296, 1300 (9th Cir. 1996) ("[G]overnment entities are incapable of forming the malicious intent necessary to support a RICO action.") (alterations and quotation marks omitted); *see also Lopez v. City of Santa Ana*, 698 F. App'x 401 (9th Cir. 2017) (same); *Chan v. City of Los Angeles*, 31 F. App'x 568 (9th Cir. 2002) (affirming dismissal of "the City of Los Angeles and the City of Los Angeles Parking Violations Bureau because both are governmental entities and therefore cannot form the requisite 'malicious intent' to support a RICO action"); *Ochoa v. Hous. Auth. of City of Los Angeles*, 47 Fed. App'x 484, 486 (9th Cir. 2002) ("Neither a municipal corporation nor its employees in their official capacities are subject to civil RICO liability.").[5]  Accordingly, because Kern County and the departments named as defendants[6] are not proper RICO defendants, they are **DISMISSED WITH PREJUDICE** as to all three RICO counts.

Turning to the individually named Defendants, the Complaint lists in broad terms that all Defendants participated in the scheme but leaves unalleged who exactly participated, how, or when. Plaintiffs' opposition to the motion to dismiss summarizes the Complaint to allege that "each named Defendant has participated individually and/or through their position within the office or department . . . to eliminate all medical marijuana dispensaries within Kern County." Opp. at 11-12.  Even assuming that Plaintiffs have adequately alleged a "common purpose" in satisfaction of the first prong, they have not alleged in the Complaint "specific facts as to the nature of the connection between defendants" or included "allegations explaining the structure of the alleged enterprise, or explain[ing] how defendants coordinated to create a vehicle with mechanisms for carrying out RICO predicate crimes." *Comm. to Protect our Agric. Water v. Occidental Oil & Gas Corp*., 235 F. Supp. 3d 1132, 1175 (E.D. Cal. 2017). This is inadequate to state a RICO claim.  *See Doan v. Singh*, 617 F. App'x 684, 686 (9th Cir. 2015)

---

[5] A governmental entity, may, however, qualify as an "enterprise" under RICO.  *See United States v. Freeman,* 6 F.3d 586, 597 (9th Cir. 1993).

[6] The County departments are Kern County Board of Supervisors, Kern County Public Works - Code Compliance Division, Kern County Sheriff's Department, District Attorney's Office, County Counsel's Office, Kern County Fire Department, Kern County Planning and Natural Resources Department, Kern County Department of Agriculture and Measurement Standards, and Kern County Public Health Department.

(affirming dismissal of a RICO claim where "it is not clear what exactly each individual did, when they did it, or how they functioned together as a continuing unit" and holding that "bare assertions of a pattern of racketeering activity do not establish an enterprise and they do not, therefore, satisfy Plaintiffs' burden").

Plaintiffs have failed to plead the existence of an associated-in-fact enterprise.

### c.      Effect On Interstate Commerce

Defendants argue that Plaintiffs have failed to allege that the enterprise is one "engaged in, or the activities of which affect, interstate or foreign commerce," an explicit requirement for violations of subsections (b) and (c) of Section 1962, and a requirement for a conspiracy claim based on those subsections.  18 U.S.C. § 1962(b), (c).  Defendants are correct that this is a jurisdictional requirement of a RICO claim.  *See United States v. Juvenile Male*, 118 F.3d 1344, 1347 (9th Cir. 1997) (holding that "RICO is aimed at activities which directly affect interstate commerce" but that "a showing that the individual predicate racketeering acts have a de minimis impact on interstate commerce" will suffice to meet that requirement).  Plaintiffs failed to respond to Defendants' argument that they failed to allege that the racketeering activity or predicate acts affected interstate or foreign commerce.

Plaintiffs have not pleaded adequately the existence of a RICO enterprise or a pattern of racketeering activity, and their RICO claims in the first and second causes of action must therefore be **DISMISSED**.  In addition, because the Complaint fails to state a claim for the RICO allegations, the claim for RICO conspiracy under 18 U.S.C. § 1962(d) also fails.  *See Eclectic Properties E.*, 751 F.3d at 1000.  Accordingly, Plaintiffs' third cause of action is **DISMISSED**.

### B.      Fourth Through Fourteenth Causes Of Action: State Law Causes Of Action

The RICO claims provided the sole basis for federal subject matter jurisdiction, and each remaining cause of action is a state cause of action.[7]  As the parties are not diverse in citizenship, the

---

[7] As Defendants correctly point out, the thirteenth and fourteenth causes of action, for declaratory relief and preliminary

18

Court's jurisdiction over the state-law claims is supplemental. *See* 28 U.S.C. § 1367(a). "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Given that this case is at an early stage of the proceedings, the Court anticipates that it will not exercise supplemental jurisdiction over Plaintiffs' state claims unless they have demonstrated that they are accompanied by at least one viable federal claim. *See Carnegie-Mellon Univ*, 484 U.S. at 350 (holding that "[w]hen the balance of . . . factors indicates that a case properly belongs in state court, as when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice"). *See also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."); *Harrell v. 20th Century Insurance Co*., 934 F.2d 203, 205 (9th Cir. 1991) ("it is generally preferable for a district court to remand remaining pendent claims to state court"); *Anderson v. Countrywide Financial*, No. 2:08–cv–01220–GEB–GGH, 2009 WL 3368444, *6 (E.D. Cal. Oct. 16, 2009) ("Since state courts have the primary responsibility to develop and apply state law, and the *Gibbs* values do not favor continued exercise of supplemental jurisdiction over Plaintiff's state claims, Plaintiff's state claims are dismissed under 28 U.S.C. § 1367(c)(3).").

injunction, are remedies, not independent causes of action. *See, e.g.*, *Rosenfeld v. JPMorgan Chase Bank, N.A*., 732 F. Supp. 2d 952, 975 (N.D. Cal. 2010) ("the Court notes that declaratory and injunctive relief are not causes of action; rather, they are remedies"). In other causes of action requesting injunctive relief, Plaintiffs cite California Code of Civil Procedure §§ 525, 526, 1709, and 1710 as the basis. *See* Complaint at 51 ¶ 6; 52 ¶ 2; and 54 ¶ 7.

Accordingly, because it remains unclear whether Plaintiffs assert any viable federal causes of action, the Court will defer ruling on the pending motion as to Plaintiffs' fourth through fourteenth causes of action until Plaintiffs have exhausted their opportunity to amend the RICO claims.

**C.      Plaintiffs' Application To Amend Complaint To Add Defendants**

The day after Defendants' filed their reply in support of their motion to dismiss and special motion to strike, Plaintiffs filed what they styled an "Application to Amend Complaint to Add Defendants," along with a proposed First Amended Complaint. ECF No. 10. Plaintiffs brought the application pursuant to California Code of Civil Procedure 474, though the California Code of Civil Procedure does not govern this federal suit. Nevertheless, the Court construes the motion as a motion for leave to amend brought pursuant to Rule 15(a). Plaintiffs ask to amend the Complaint to add as defendants Leticia Perez, individually and as Kern County Supervisor; Charles F. Collins, individually and as Chief Deputy Kern County Counsel; Stephanie Smith, individually and as principal of Industrial Partners Group, Inc.; Ben Eilenberg, individually and as general counsel for Industrial Partners Group, and Industrial Partners Group. *Id.* at 2. Plaintiffs argue that these names were unavailable to them at the time they filed the Complaint. This assertion is belied by the fact that both Leticia Perez and Charles Collins are listed as Defendants in the Complaint. *See* Complaint ¶¶ 10, 23. Defendants argue that these names cannot have been unavailable to Plaintiffs because they are listed on the Complaint and Plaintiffs dismissed them without prejudice before the case was removed to federal court. ECF No. 12 (Opposition to Plaintiffs' Application to Amend Complaint); ECF No. 1-1 (Notice of Removal) ¶ 5, Ex. B (Request for Dismissal without Prejudice entered as to Leticia Perez on November 6, 2017), Ex. C (Request for Dismissal without Prejudice entered as to Charles F. Collins on November 6, 2017). Plaintiffs seek to add Ben Eilenberg, Stephanie Smith, and IPG Group ("IPG") on the basis that they are the "Los Angeles-based business" to which Oviatt referred. Specifically, the proposed amended complaint alleges that Kern County Supervisor Mike Maggard "uncovered the identity of the 'Los Angeles business' while being interviewed on the Ralph Bailey Show on KERN Radio 96.1 FM, on

January 9, 2017," stating that "Ben Eilenberg, a 'Pot-Shop Attorney from Los Angeles' came to the Kern County Board of Supervisors and told them: 'If you don't approve what we want, I'll take you on; if you do what we want, I'll take on the pot-shop owners that you don't want to be in competition with.'" ECF No. 10-1 ¶ 45. Plaintiffs' counsel then performed an internet search and found Ben Eilenberg and Stephanie Smith, who are allegedly counsel to and a principal of IPG. *Id.*

Under Federal Rule of Civil Procedure 15(a), courts are directed to take five factors into consideration when assessing the propriety of a motion for leave to amend the complaint: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint." *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004). "Futility alone can justify the denial of a motion to amend." *Id.* (quoting *Nunes v. Ashcroft*, 348 F.3d 815, 818 (9th Cir.2003)). The application to add defendants and the proposed paragraph do not aid Plaintiffs' effort to state a plausible RICO claim. The proposed Amended Complaint includes no specific allegations concerning County employees Perez and Collins, and at best, the allegations concerning IPG would tend to show only the County's purported motive to support Plaintiffs' allegations that Oviatt stated that the County intended to shut down Kern County medical marijuana dispensaries and cede the market to dispensaries based in Los Angeles. As discussed above, Plaintiffs have identified nothing in Oviatt's statement that is false or misleading, and this added allegation does not change that. Accordingly, Plaintiffs' request to amend their complaint to add these new defendants is **DENIED** without prejudice.

## VI. <u>CONCLUSION AND ORDER</u>

For the foregoing reasons, the Defendants' Motion to Dismiss is **GRANTED IN PART**. The Defendants' Motion to Dismiss Counts One, Two, and Three is **GRANTED**.

Based on the foregoing analysis of Plaintiffs' claims, the Court doubts that Plaintiffs can cure their RICO claims through amendment. However, out of an abundance of caution, the Court will afford Plaintiffs an opportunity to amend their pleadings only as to the RICO claims. Plaintiffs will not be

permitted to add new claims or parties to the amended complaint without first obtaining leave to do so. The Court grants Plaintiffs an opportunity to amend the RICO claims only, and, thus, Counts One, Two, and Three are **DISMISSED** with leave to amend.

Plaintiffs shall file their amended complaint within twenty (20) days of the date of this order. To the extent Plaintiffs seek to add new claims or new parties to the complaint, they must file a properly noticed motion seeking leave to do so under Rule 15 of the Federal Rules of Civil Procedure. If the scope of any amended complaint exceeds the scope of the leave to amend granted by the Court's order dismissing the original complaint, the Court will strike the offending portions of the pleading under Rule 12(f). *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading"); *see also Barker v. Avila*, No. 2:09-cv-00001-GEB-JFM, 2010 WL 3171067, *1-2 (E.D. Cal. Aug. 11, 2010) (striking an amendment to a federal law claim where the court had granted leave to amend only state law claims).

The Court **DEFERS** ruling on the Defendants' Motion to Dismiss Counts Four through Fourteen.


IT IS SO ORDERED.

Dated:   **March 8, 2018**              **/s/ Lawrence J. O'Neill**
                                                         UNITED STATES CHIEF DISTRICT JUDGE